**The STATE of Ohio,**

**v.**

**SMITH.**

Municipal Court of Sidney, Ohio.

No. 96TRC02070AB.

Decided Aug. 28, 1996.

*Tonya K. Thieman,* City Prosecutor, for the plaintiff.

*Richard H. Wallace* and *Thomas A. Ballato,* for the defendant.

DONALD G. LUCE, Judge.

This matter came before the court on defendant's motion to suppress. A hearing was held on the 24th day of July, 1996.

The defendant, James E. Smith ("Smith"), was arrested on May 19, 1996, and charged with operating a motor vehicle under the influence of alcohol, a violation of R.C. 4511.19(A)(1). Trooper Lewis, the arresting officer, requested that Smith submit a urine sample. This urine sample was taken at approximately 6:00 a.m. on Sunday, May 19, 1996.

Trooper Lewis testified at the evidentiary hearing that due to the fact that the arrest of Smith occurred at the end of Lewis's shift the urine sample was placed in a U.S. mailbox located at his apartment complex at approximately 7:00 a.m. on Sunday, May 19, 1996. The urine sample remained in Trooper Lewis's mailbox, unrefrigerated, until the mail was picked up sometime on Monday, May 20, 1996. As indicated by State's Exhibit 1, the Ohio State Highway Patrol Crime Laboratory received the urine sample on May 21, 1996, at 9:30 a.m. State's Exhibit 1

also discloses that the sample was removed from the refrigerator by Jeffrey Turnau ("Turnau"), Laboratory Technician for the crime laboratory, at 8:30 a.m. on May 22, 1996. The urine sample was examined, disclosing that the specimen contained .223 grams of alcohol by weight per 100 milliliters, plus or minus five percent.

The defendant contends that Ohio Adm.Code 3701–53–05(F) has not been substantially complied with, and therefore the urine test should be suppressed. This section provides as follows: "While not in transit to a laboratory or under examination, all urine and blood specimens shall be refrigerated at a temperature of forty-two degrees Fahrenheit or below."

As a preliminary matter it should be noted that the state has the burden of proving compliance with Department of Health regulations. *State v. Gasser* (1980), 5 Ohio App.3d 217, 219, 5 OBR 501, 503–504, 451 N.E.2d 249, 251–252. Further, *State v. Plummer* (1986), 22 Ohio St.3d 292, 22 OBR 461, 490 N.E.2d 902, stands for the proposition that substantial compliance with Department of Health regulations is sufficient and strict compliance is not required.

There are two subissues involved in this case. The first concerns the fact that Trooper Lewis placed the urine sample in a mailbox on early Sunday morning knowing that the mail would not be picked up for at least twenty-four hours. The second issue concerns the arrival of the sample at the laboratory and the date and time it was refrigerated after it was received. Each of these issues will be taken in turn.

The first subissue raises the question of whether the sample is "in transit" if the package is placed in a mailbox on a non-mail day. The defendant relies on the case of *State v. Pugh* (Aug. 5, 1985), Stark App. No. CA–6585, unreported, 1985 WL 6476. In the *Pugh* case, the urine sample was sent from Canton to Columbus, Ohio, via U.S. mail in a cardboard shipping container on Saturday night on the Labor Day holiday weekend, and it was delivered the following Wednesday morning. The arresting officer was aware that there would be no mail delivery Sunday or Monday. The court held under the facts of that case that the sample was not "in transit" for the complete time period of 11:30 p.m., September 1 to 8:30 a.m., September 5, 1984.

It should be noted that the *Pugh* holding was limited to the facts of that particular case and does not stand for the sweeping proposition that any period of time that a urine sample is unrefrigerated on "non-mail" days constitutes a violation of Ohio Adm.Code 3701–53–05(F), as maintained by the defendant.

The *Pugh* case is not binding on this court and this court declines to follow its rationale. Given the number of "non-mail" days, such as weekends and holidays, as well as the vagaries of the U.S. Postal Service, it seems quite impractical to

define Ohio Adm. Code 3701–53–05(F) in such a manner as to not include "non-mail" days as being part of the transit process. Moreover, the court finds that the facts in this case are not as aggravated as those in the *Pugh* case and that in regard to this subissue the court finds that the state substantially complied with the Ohio Department of Health regulations. *State v. Plummer, supra.*

More disturbing is the second sub-issue. The evidence discloses that the lab received the urine sample at 9:30 a.m. on Tuesday, May 21, 1996. However, State's Exhibit 1, the property-control form, does not indicate when the urine sample was refrigerated by laboratory personnel and, in fact, there is no evidence to indicate when this sample was refrigerated. State's Exhibit 1 discloses that Turnau removed the sample from the refrigerator for testing at 8:30 a.m. on May 22, 1996. The property-control form does not indicate when or by whom the sample was originally placed in the refrigerator. This is careless procedure on behalf of the laboratory. As noted earlier, *State v. Plummer, supra,* stands for the proposition that substantial compliance with Ohio Department of Health regulations is sufficient. The *Plummer* holding, however, was predicated on the fact that "strict compliance is not always realistically or humanly possible." *Id.,* 22 Ohio St.3d at 294, 22 OBR at 463, 490 N.E.2d at 905. Certainly it is realistically and humanly possible for the Ohio State Highway Patrol Crime Laboratory to develop good procedures so as to document the complete chain of custody of evidence and to follow those procedures. Part of the chain of custody is to disclose when the sample was first refrigerated and who performed this action. This was not done in the case at bar, and since the burden is on the state to prove compliance with Ohio Department of Health regulations the court finds in favor of the defense. The motion to suppress is granted, and the urine test results are suppressed.

*Motion to suppress granted.*